# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW J. WALKER,<br><br>    Plaintiff,<br><br>vs.<br><br>WEXFORD MEDICAL PROVIDER,<br>MCGLORN,<br>AMY LANG, and<br>GAIL WALLS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 17-cv-0933-JPG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Andrew J. Walker, an inmate currently incarcerated at Pontiac Correctional Center, brings this pro se action for alleged violations of his constitutional rights under 42 U.S.C. § 1983 for events that occurred at Menard Correctional Center. (Doc. 1). Specifically, Plaintiff alleges that Defendants conspired to violate his Eighth and Fourteenth Amendment rights by serving him a soy-based diet. He seeks compensatory damages and declarative relief.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

## The Complaint

1

Plaintiff alleges that the Illinois Department of Corrections ("IDOC") began using a soy/turkey meat substitute in place of beef in 2002. (Doc. 1, p. 4). When Plaintiff entered IDOC custody in 2014, he began suffering from gastrointestinal problems, painful cramping, bloating, and constipation. *Id.* Over time, his symptoms worsened. *Id.* Plaintiff self-administered an empirical food sensitivity test, and became convinced that his problems are associated with the soy in his diet. (Doc. 1, p. 5). Plaintiff's family also performed internet research that persuaded him that his symptoms are identical to food allergies associated with soy consumption. *Id.* Despite Plaintiff's research, McGlorn and Lang refused to prescribe a soy-free diet or treat Plaintiff for any food allergies. *Id.* Lang told Plaintiff that he just needed to eat around any soy on his tray. *Id.*

Plaintiff was tested for prostate problems, which came back negative. (Doc. 1, p. 6). He was also given docusate sodium, a stool softener, and fiber lax, which helped his symptoms for a short time. *Id.* But ultimately, Plaintiff's problems continued to affect him and he continued to seek medical treatment. *Id.* Wexford staff refused to do anything but prescribe docusate sodium and fiber lax. *Id.*

Plaintiff saw McGlorn and Lang on January 12, 2016. *Id.* He told McGlorn that he was suffering from gastro-intestinal problems, including bloating to the point of cramping, obstructed urination, trouble defecating on a regular basis, hemorrhoids, and estrogen symptoms, like weight gain and breast development. *Id.* McGlorn re-prescribed docusate sodium and fiber lax. (Doc. 1, p. 7). Plaintiff wrote letters to the Warden, the dietary supervisor, and the healthcare administrator, but his letters were ignored. *Id.*

Plaintiff alleges that Wexford is engaged in a conspiracy to deny the fact that soy is detrimental to inmates' health. (Doc. 1, pp. 7-8).

## Discussion

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into the following enumerated claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit. The following claim survives threshold review:

> **Count 1:** McGlorn, Lang, and Walls, were deliberately indifferent to Plaintiff's serious medical needs when they persisted in a course of treatment known to be ineffective with regards to Plaintiff's gastrointestinal and estrogen symptoms in violation of the Eighth Amendment.

Plaintiff has attempted to bring another claim, but for the reasons described below, this claim will be dismissed at this time:

> **Count 2:** Wexford engaged in a conspiracy to deny that soy is detrimental to inmates' health in violation of the Eighth Amendment.

As to Plaintiff's **Count 1,** prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective element requires proof that the

defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eight Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Deliberate indifference may also be shown where medical providers persist in a course of treatment known to be ineffective. *Berry v. Peterman*, 604 F.3d 435, 441-42 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

Here Plaintiff has alleged that he suffered persistent gastrointestinal symptoms. It is unclear how serious Plaintiff's symptoms are, but at the pleading stages, he has alleged enough to make it plausible that he suffered from a serious medical need. Plaintiff has also alleged that the treatment he was given only temporarily alleviated his symptoms, but despite this, no alternative treatment was offered. These facts state a plausible claim for deliberate indifference. While Plaintiff has alleged that McGlorn and Lang were actually involved in his care, his allegation as to Walls is slightly different. Plaintiff alleges that he made Walls aware of his condition through kites and grievances, but that she declined to act. As written notice is an adequately allegation of personal involvement at the pleading stages, Plaintiff's claims against

4

Walls will be permitted to proceed at this time.[1]  *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015).

However, **Count 2** must be dismissed.  Plaintiff's allegation is that Wexford denies that a soy diet is detrimental to Plaintiff's health.  For purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002), so Wexford will be treated as a municipal entity for this suit.  "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)."  *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)).

Plaintiff's allegation that Wexford has a policy of denying that a soy diet is detrimental to inmates' health fails to state a claim because it is not established that serving a soy diet violates the Constitution.  A number of courts have rejected inmates' claims that a soy diet puts them at risk of serious harm.  In *Harris v. Brown*, the court appointed both attorneys and experts for the plaintiffs, but ultimately concluded after reviewing the expert reports and noting the ubiquity of soy in the American diet that "society today simply does not see soy protein as a risk to the general population, much less a serious risk."  No. 07-CV-3225, 2014 WL 4948229 at *4 (C.D. Ill. Sept. 30, 2014).  The court granted summary judgment to the defendants, noting that even if it accepted the plaintiffs' expert opinions, they did not conclusively establish that soy protein created a risk, only that "the safety of soy is a topic of current debate and study."  *Id.*  Other

---

[1] Plaintiff has alleged that he wrote several other prison officials and apprised them of his condition, but he has not listed those individuals in the case caption or among the defendants, Fed. R. Civ. P. 10, and so the Court has not construed the Complaint as making a claim against those individuals.

courts have also come to the same conclusion, albeit on a less developed record. *See Riley-El v. Godinez*, No. 13 C 8656, 2015 WL 4572322 at *4 (N.D. Ill. July 27, 2015) ("[T]he alleged risks posed by consuming a soy-rich diet to not rise to the level of an Eighth Amendment violation."); *Munson v. Gaetz*, 957 F.Supp.2d 951, 954 (S.D. Ill. 2013) (finding that defendants were entitled to qualified immunity because no court has found soy to be harmful); *Smith v. Rector*, No. 13-cv-837, 2013 WL 5436371 (S.D. Ill. Sept. 30, 2013)(dismissing claim on vague allegations that prison meals contained too much soy); *Adams v. Talbor*, No. 12-2221, 2013 WL 5940630 (C.D. Ill. Nov. 6, 2013) (dismissing prisoner's claim that a soy based diet caused him to experience stomach problems).

Alternatively, the Court finds that Wexford is entitled to qualified immunity. Qualified immunity shields government officials from liability where "their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court uses a two part test to determine whether a defendant is entitled to qualified immunity: 1) whether the conduct complained of violates the constitution; 2) whether the right was clearly established at the time the conduct occurred. *Id.* at 743 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Either element of the test may be reached first. *Pearson*, 555 U.S. at 236.

Although qualified immunity is an affirmative defense, the burden of meeting the two part test rests on the plaintiff. *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995). The Supreme Court has emphasized the importance of resolving qualified immunity questions at the earliest stage possible of litigation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Seventh Circuit has also upheld dismissals on qualified immunity grounds in soy diet cases on a 12(b)(6) motion,

6

which shares its standard with § 1915A. *See Doe v. Village of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015). The Court will dismiss on qualified immunity grounds where the facts of the complaint, taken as true, fail to allege the violation of a clearly established right.

Here the Court has not found a single case that concludes that soy-based diets pose a serious risk to prisoner health generally. It has not found a case that holds that soy is nutritionally inadequate or that it violates the Constitution. In fact, the Seventh Circuit specifically declined to hold that a soy-based diet violates the Constitution in at least one case. *Johnson v. Randle*, 619 F. App'x 552, 554 (7th Cir. 2015) The Court therefore finds that because no court has found a soy-based diet unconstitutional, the right is not clearly established and Wexford is entitled to qualified immunity.

To the extent that Plaintiff alleges that Wexford is engaged in a conspiracy, that claim also fails. As an initial matter, Plaintiff has not identified any other member of the conspiracy. More to the point, because the Complaint has not adequately stated a constitutional claim regarding the soy diet, there can be no conspiracy claim regarding it. In the alternative, the Complaint also offers insufficient allegations in support of a conspiracy claim. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citations omitted). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an

7

understanding to achieve the conspiracy's objectives." *Id.* at 305 (citation omitted). The Plaintiff's mention of a conspiracy is insufficient, even at this early stage, to satisfy basic pleading requirements under Federal Rule of Civil Procedure 8 or *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face"). The factual allegations do not support a conspiracy claim against Wexford for failing to accept Plaintiff's conclusion that a soy diet is detrimental.

Further, conspiracy is not an independent basis of liability in Section 1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "There is no constitutional violation in conspiring to cover up an action which does not itself violate the Constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). For all of the above reasons, **Count 2** shall be dismissed with prejudice.

## Pending Motions

Plaintiff's Motion for Recruitment of Counsel is referred to a United States Magistrate Judge for disposition. (Doc. 3).

Plaintiff's Motion for Leave to Proceed in forma pauperis is **DENIED** as **MOOT**. (Doc. 10). Plaintiff initially moved to proceed in forma pauperis on August 31, 2017. (Doc. 2). That Motion was granted on September 21, 2017. (Doc. 8). The Court received Plaintiff's initial partial filing fee on October 23, 2017. As the Court has already granted the relief requested in the motion, the motion is moot. (Doc. 10).

## Disposition

**IT IS ORDERED** that **COUNT 1** survives threshold review against McGlorn, Lang, and Walls. **COUNT 2** is **DISMISSED with prejudice** for failure to state a claim and on the grounds of qualified immunity. Wexford is **DISMISSED with prejudice**. Plaintiff's Motion to Proceed

8

IFP is **DENIED as MOOT**. (Doc. 10).

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants McGlorn, Lang, and Walls: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 25, 2017**

s/ J. Phil Gilbert
**U.S. District Judge**